UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JIANGFEI GU, | ) | CASE NO.: 3:26-cv-00036 |
| | ) | |
| Petitioner, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| KRISTI NOEM, Secretary, U.S. | ) | **MEMORANDUM OPINION** |
| Department of Homeland Security, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Respondents. | ) | |

Before the Court is Petitioner Jiangfei Gu's ("Petitioner") Petition for Writ of Habeas

Corpus under 28 U.S.C. § 2241 ("Petition") and Complaint for Emergency Injunctive Relief.

(Doc. 1.)  Respondents are Kristi Noem, Secretary of the United States Department of Homeland

Security; Robert Lynch,[1] Field Office Director of the Cleveland Field Office for Immigration and

Customs Enforcement ("ICE"); and Dennis Sullivan, Executive Director of the Corrections

Center of Northwest Ohio (together "Respondents").  (*Id.*)  Respondents opposed the Petition

and request for emergency injunctive relief.  (Doc. 3.)  Petitioner replied.  (Doc. 4.)  The parties

also filed supplemental briefing.  (Docs. 6, 7.)  For the reasons below, the Petition is GRANTED.

## I.     BACKGROUND

Petitioner is a native of the Peoples Republic of China.  (Doc. 1 at 1, ¶ 2.)[2]  In April 2024,

Petitioner entered the United States without inspection through San Ysidro, California and has

resided in the United States since that time.  (*Id.* at 1-4, ¶¶ 2, 20; Doc. 3 at 34.)  Shortly after

---

[1] The Field Office Director for ICE which covers Cleveland is currently Kevin Raycraft.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kevin Raycraft is substituted for
Robert Lynch.  Fed. R. Civ. P. 25(d).

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document
and PageID# rather than any internal pagination.

entering, Petitioner filed an application for asylum.  (Doc. 1 at 4, ¶ 20.)  On May 24, 2024, the

Department of Homeland Security commenced removal proceedings against Petitioner under §

212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA").  (Doc. 3-1 at 55.)  On October

14, 2025, ICE arrested Petitioner on the Ambassador Bridge in Detroit, Michigan.  (Doc. 1 at 2, ¶

4: Doc. 3 at 34.)  Since then, he has been detained at the Correction Center of Northwest Ohio.

(Doc. 1 at 2, ¶ 5.)  On January 26, 2026, an Immigration Judge held a hearing.  Then, on

February 25, 2026, an Immigration Judge ordered Petitioner be removed.  (Doc. 7-2.)  Petitioner

reserved his right to appeal, and so the removal order is not yet final.  (Doc. 7 at 151.)

On October 22, 2025, Petitioner filed a bond redetermination request with an immigration

judge.  (Doc. 3-1 at 55.)  On October 28, 2025, an Immigration Judge held a bond hearing.  (*Id.*)

The Immigration Judge found Petitioner was detained under § 235(b)(2)(A) of the INA, 8 U.S.C.

§ 1225(b)(2)(A).  (*Id.*)  Under § 235(b)(2)(A), Petitioner was ineligible for bond pursuant to

§ 1229a for the duration of the removal proceedings.  (*Id.*)  As authority, the Immigration Judge

cited *Matter of Q. Li*, 29 I&N Dec. 66, 69 (BIA 2025) for the proposition that "the [Board of

Immigration Appeals] held that based on the plain language of section 235(b)(2)(A) of the

Immigration and Nationality Act, 8 U.S.C. § 1225(b)(2)(A) (2018), Immigration Judges lack

authority to hear bond requests or to grant bond to aliens who are present in the United States

without admission."  (*Id.* at 56-57.)  The Immigration Judge also stated Petitioner did not present

evidence he was "not a flight risk" or is not "a danger to the community."  (*Id.* at 57.)

On January 6, 2026, Petitioner filed his Petition bringing two claims: (1) violation of the

Due Process Clause of the Fifth Amendment; and (2) violation of the INA.  (Doc. 1 at 13-14, ¶¶

50-62.)  Petitioner alleges the Immigration Judge incorrectly determined § 1225 applied to him

which requires mandatory detention of Petitioner.  (*Id.* at 14-15, ¶¶58-62.)  To Petitioner, he is

detention is governed by § 1226, which allows for discretionary bond.  (*Id.*)

Pursuant to the Court's Show Cause Order (Doc. 2), Respondents timely opposed the Petition.  (Doc. 3.)  Petitioner timely replied.  (Doc. 4.)  On February 12, 2026, the Court ordered further briefing to address the effect, if any, of the Immigration Judge's alternative findings that Petitioner failed to present evidence which supported a finding Petitioner was "not a flight risk" or is not "a danger to the community."  (Doc. 5.)  Both parties filed briefs addressing the matter. (Docs. 6, 7.)

## II.     ANALYSIS

### A.     Legal Standard

Any "individual detained within the United States" may seek a writ of habeas corpus. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).  Habeas relief is available where a person's custody violates "the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

### B.     Jurisdiction

Petitioner asserts his continued detention violates due process guaranteed by the Fifth Amendment and violates provisions of the INA.  (*See generally* Doc. 1.)  Generally, federal courts have jurisdiction to issue writs of habeas corpus to persons detained in the United States. *Hamdi*, 542 U.S. at 525.  This includes non-citizens in immigration matters.  *Zadvydas v. Davis*, 533 U.S. 678, 687, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).  However, Congress has statutorily restricted jurisdiction in certain specific circumstances.  In this case, Respondents argue Congress did so under two provisions of the INA: § 1252(g) and § 1252(b)(9).  (Doc. 3 at 35-38.)  Each is considered in turn.

### 1. Section 1252(g)

Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  This "narrow" "provision limits review of cases 'arising from' decisions [of the Attorney General] 'to commence proceedings, adjudicate cases, or execute removal orders." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19, 140 S. Ct. 1891, 207 L. Ed. 2d 353 (2020).  Section 1252(g) does not cover "all claims arising from deportation proceedings," nor does it impose "a general jurisdiction limitation." *Id.* (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 119 S. Ct. 936, 142 L. Ed. 2d 940 (1999)). The Supreme Court has thus interpreted the "arising from" language in the statute "to refer to just those three specific actions" listed, that being "commence proceedings, adjudicate cases, or execute removal orders." *Jennings v. Rodriquez*, 583 U.S. 281, 294, 138 S. Ct. 830, 200 L. Ed. 2d 122 (2018).  Put another way, Section 1252(g) precludes judicial review of a petitioner's claims "arising from" decisions to "commence proceedings, adjudicate cases, or execute removal orders. *Regents of Univ. of Cal.*, 591 U.S. at 19.

Consistent with the Supreme Court's narrow interpretation of § 1252(g), the Sixth Circuit has held a district court has jurisdiction over "detention-based claims" "independent" from "removal-based claims." *Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018).  In *Hamama*, the Sixth Circuit found § 1252(g) prohibited a district court from exercising jurisdiction over habeas petitions challenging the removal action itself but did not bar a district court from considering "detention-based claims" raised in the petition, *e.g.*, a request for a bond hearing.

*Id.*; *see also Elgharib v. Napolitano*, 600 F.3d 597, 605 (6th Cir. 2010) (habeas petition would not be barred if the "petition raised a challenge that did not require the district court to address the merits of her order of removal").

To Respondents, the "Secretary of Homeland Security's decision to *commence removal proceedings* [] includes the decision to detain an alien pending such removal proceedings." (Doc. 3 at 35 (emphasis in original).)  Petitioner argues otherwise.  (Doc. 4 at 90.)  To Petitioner, Respondents' argument contradicts the Supreme Court which has held § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions" in the statute.  (*Id.* (citing *Jennings*, 583 U.S. at 294).)  That is exactly what Respondents attempt to do here, Petitioner argues, by suggesting the decision to "commence removal proceedings" includes additional proceedings such as whether to detain an alien.  (*Id.*)  A bond determination, Petitioner says, is a "distinct proceeding from an alien's underlying removal proceeding."  (*Id.*)

Textually speaking, the decision to deny a bond hearing is not a decision to "commence proceedings."  *Lopez v. Noem*, No. 26-cv-128, 2026 WL 395202, 2026 U.S. Dist. LEXIS 29036, at *2-3 (N.D. Ohio Mar. 2, 2026).  A decision to "commence proceedings," by its plain terms relates to a removal decision.  Nor is this Petition challenging a decision arising from the adjudication of the case.  And this Petition is not related to the execution of removal orders.  To hold otherwise would contradict Supreme Court precedent holding § 1252(g) does not—as Respondents urge—"sweep in any claim that can technically be said to 'arise from' the three listed actions."  *Jennings*, 583 U.S. at 294.  In explaining why §1252(g) is to be narrowly construed, the Supreme Court explained "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."  *Reno*, 525 U.S. at 485, n.9.  Thus, § 1252(g) denies jurisdiction to review prosecutorial decisions in the removal process,

including the discretion to decide (1) who should be removed, (2) the bases on which to pursue removal, and (3) the manner of removal. *Coronado v. Sec'y of Dep't of Homeland Sec.*, No. 25-cv-831, 2025 WL 3628229, 2025 U.S. Dist. LEXIS 258690, at *8 (S.D. Ohio Dec. 15, 2025). A challenge to whether a detainee can be held without a bond hearing, however, does not fall into the statutory exclusion. The Petition does not suggest nor request this Court review Respondents' decision to commence removal proceedings.

District courts in this Circuit have overwhelmingly reached the same conclusion. *See, e.g.*, *E.V. v. Raycraft*, No. 25-cv-2069, 2025 WL 3122837, 2025 U.S. Dist. LEXIS 220483, at *10-11 (N.D. Ohio Nov. 7, 2025) (holding § 1252(g) "does not bar judicial review over Petitioners [sic] constitutional due process claims or allegations that Respondents violated the INA and its implementing regulations"); *Lopez*, 2026 WL 395202, 2026 U.S. Dist. LEXIS 29036, at *2-3 (§ 1252(g) "does not divest courts of subject matter jurisdiction over habeas challenges to the legality of a noncitizen's detention); *Singh v. Stevens*, No. 26-cv-133, 2026 WL 456489, 2026 U.S. Dist. LEXIS 32574, at *2 (N.D. Ohio Feb. 18, 2026) (same); *Coronado*, 2025 WL 3628229, 2025 U.S. Dist. LEXIS 258690, at *7 ("even if the detention 'arises from' deportation proceedings in the sense that the detention is logically connected to those proceedings, the decision to *detain* or *take custody of* a noncitizen is distinct from the decision to *initiate* removal proceedings"); *Del Villar v. Noem*, No. 25-cv-137, 2025 WL 3231630, 2025 U.S. Dist. LEXIS 227575, at *4 (W.D. Ky. Nov. 19, 2025) (noting that "Respondents conceded that Section 1252(g) is inapplicable in this case"); *Fuentes v. Olson*, No. 25-cv-1634, 2025 WL 3649563, 2025 U.S Dist. LEXIS 261058, at *5 (W.D. Mich. Dec. 17, 2025) ("a writ of habeas corpus ordering Respondents to conduct a bond hearing does not seek review of a discretionary decision to commence proceedings, adjudicate a case, or execute a removal order"); *Cortez v.*

*Lynch*, No. 25-cv-822, 2026 WL 82039, 2026 U.S. Dist. LEXIS 5272, at *7-8 (S.D. Ohio Jan. 12, 2026) (same); *Ramirez v. Lynch*, No. 25-cv-1408, 2025 WL 3267771, 2025 U.S. Dist. LEXIS 230745, at *5-6 (W.D. Mich. Nov. 24, 2025) (same).

While Respondents cite a collection of cases allegedly holding otherwise, (Doc. 3 at 35-36), none are persuasive. Consider first *Alvarez v. Immigration & Customs Enforcement*, 818 F.3d 1194 (11th Cir. 2016). In *Alvarez*, the habeas petition challenged "the methods that ICE used to detain him," specifically, that he was "detained by means of misrepresentations and disregard for the Department of Justice's commitment in his plea agreement." *Id.* at 1204. Here, Petitioner challenges the immigration judge's determination that his detention is mandatory under § 1225. That matter of statutory interpretation is distinct from the *Alvarez* petition. Then consider *Tazu v. Att'y Gen. United States*, 975 F.3d 292 (3d Cir. 2020). In *Tazu*, petitioner challenged a removal order itself and the means in which he would be removed. *Id.* But that petition fell squarely within § 1252(g)'s jurisdictional limitation. There is nothing in *Tazu* that helps Respondents here.

In short, § 1252(g) does not limit the Court's jurisdiction to hear any and all claims that could be related to removal proceedings. As *Jennings* held, Section 1252(g)'s jurisdictional bar has limits. This is such an example.

### 2.    Section 1252(b)(9)

Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law

or fact.

8 U.S.C. § 1252(b)(9).

"Section 1252(b)(9) bars review of claims arising from "action[s]" or "proceeding[s]" brought to remove an alien." *Regents of Univ. of Cal.*, 591 U.S. at 19.  "[Section] 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" *Id.* (quoting *Jennings*, 583 U.S. at 294).  Put simply if "the parties are not challenging any removal proceedings," § 1252(b)(9) does not apply.  *Id.*

Respondents resurrect the argument that Petitioner's challenge "arises from" removal proceedings, and, therefore, courts lack jurisdiction to hear claims like Petitioner's.  (Doc. 3 at 36-37.)  Similarly, Petitioner maintains that § 1252(b)(9) does not apply to all aspects of removal proceedings, and is, instead, limited to challenges to an order of removal, a decision to detain in the first place or a decision to seek removal, or the process of removability.  (Doc. 4 at 89.)

*Jennings* resolves this argument.  Section 1252(b)(9) "does not present a jurisdictional bar" where those bringing suit "are not asking for review of an order of removal," "the decision to detain them in the first place or to seek removal," or "the process by which their removability will be determined." *Jennings*, 583 U.S. at 294-95.  Petitioner is not challenging the removal proceeding.  He challenges the statutory interpretation regarding his detention and due process rights.  Thus, under *Jennings*, § 1252(b)(9) does not present a jurisdictional bar here.

Other courts have similarly and consistently rejected Respondents' arguments.  *See, e.g.*, *E.V.*, 2025 WL 3122837, 2025 U.S. Dist. LEXIS 220483, at *14 ("Numerous district courts have rejected similar arguments asserting that § 1252(b)(9) bars review concerning legality of detention under §§ 1225 and 1226."); *Edahi v. Lewis*, No. 25-cv-129, 2025 WL 3466682, 2025

U.S. Dist. LEXIS 233006, at *5 (W.D. Ky. Nov. 27, 2025) ("Despite numerous decisions to the contrary in this District and across the country, the United States continues to assert that this Court does not have jurisdiction under 8 U.S.C. § 1252(b)(9)"); *Coronado*, 2025 WL 3628229, 2025 U.S. Dist. LEXIS 258690, at *7 ("even if the detention 'arises from' deportation proceedings in the sense that the detention is logically connected to those proceedings, the decision to *detain* or *take custody of* a noncitizen is distinct from the decision to *initiate* removal proceedings"); *Aranda v. Olson*, No. 25-cv-156, 2025 WL 3499061, 2025 U.S. Dist. LEXIS 251386, at *5 (W.D. Ky. Dec. 5, 2025) (collecting cases); *Rodriquez v. Woosley*, No. 25-cv-168, 2026 WL 36345, 2026 U.S. Dist. LEXIS 1485, at *5 (W.D. Ky. Jan. 6, 2026) (same); *Resendiz v. Noem*, No. 25-cv-159, 2025 WL 3527284, 2025 U.S. Dist. LEXIS 254523, at *4 (W.D. Ky. Dec. 9, 2025) (same); *Guerra v. Noem*, No. 25-cv-1341, 2025 WL 3204289, 2025 U.S. Dist. LEXIS 225782, at *12 (W.D. Mich. Nov. 17, 2025) ("§ 1252(b)(9) does not divest this Court of its jurisdiction to consider his habeas petition"); *Ochoa Ochoa v. Noem*, No. 25-cv-10865, 2025 WL 2938779, 2025 U.S. Dist. LEXIS 204142, at *7 (N.D. Ill. Oct. 16, 2025) ("questions of law as to whether certain statutory provisions require detention without a bond hearing (or in [petitioner's] case, *permits* such detention) cannot be said to 'arise from' an action taken to remove a noncitizen") (quotation and citation omitted).

### C.     Exhaustion of Administrative Remedies

Courts must dismiss claims where a statute mandates the exhaustion of administrative remedies, and a petitioner fails to do so.  *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). "The exhaustion doctrine both allows agencies to 'apply their special expertise in interpreting relevant statutes' and promotes judicial efficiency." *Id.* (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. 888 Corp.*, 813 F.2d 760, 764 (6th Cir. 1987)).  Where "Congress has not

clearly required exhaustion, sound judicial discretion governs whether or not exhaustion should be required." *Id.* (citation omitted); *Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 778 (E.D. Mich. 2025) ("Exhaustion requirements not written into the text of the statute are prudential.").

The Sixth Circuit has not addressed prudential exhaustion in circumstances like those presented here. *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, 2025 U.S. Dist. LEXIS 175767, at *7 (E.D. Mich. Sep. 9, 2025) (the Sixth Circuit has not addressed "whether courts *should* impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention.").  In evaluating prudential exhaustion in habeas petitions seeking bond hearings, district courts in this circuit generally consider three factors:

1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Lopez-Campos*, 797 F. Supp. 3d at 778; *Fuentes*, 2025 WL 3649563, 2025 U.S. Dist. LEXIS 261058, at *7-8.

Even if the factors weigh in favor of requiring prudential exhaustion, the Sixth Circuit has articulated multiple exceptions to the exhaustion requirement, including "when the administrative remedy does not serve the purposes behind the exhaustion doctrine, if the administrative remedies are inadequate or not efficacious, or where pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594.  And "exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures." *Id.* (citing *Bangura v. Hansen*, 434 F.3d 487, 493 (6th Cir. 2006)).

Section 2241 contains no explicit exhaustion requirement. *Fuentes*, 2025 WL 3649563, 2025 U.S. Dist. LEXIS 261058, at *7-8 ("no applicable statute or rule mandates administrative

exhaustion" in § 2241 petitions).  Respondents do not cite to any provision that would mandate exhaustion.  Instead, Respondents assert Petitioner failed to exhaust administrative remedies and cite to other cases in this district that have dismissed petitions in this context on prudential grounds.  (Doc. 3 at 38-39.)

Not surprisingly, Petitioner argues § 2241 does not require exhaustion of administrative remedies.  (Doc. 4 at 90.)  Petitioner also argues the prudential exhaustion factors counsel in favor of not applying exhaustion in this case because the issues are purely legal, there is no deliberate bypass of administrative scheme since the BIA cannot review constitutional claims, and further administrative review would not likely change the outcome.  (*Id.* at 91.)  Even if the Court applies prudential exhaustion, Petitioner argues because the BIA found it lacks jurisdiction to decide constitutional questions, such as the one presented by Petitioner, an appeal would be futile under these circumstances.  (*Id.*)  Lastly, Petitioner argues even if exhaustion is required, and it would not be futile, the Court should waive the requirement here because Petitioner will experience irreparable harm if he must await a bond decision (which may not come) and appeal (which may take years).  (*Id.*)

District courts in this circuit have gone both ways on this issue.  Some have dismissed petitions for failure to exhaust by way of appeal to the BIA under identical circumstances.  *See Monroy Villalta v. Greene*, 794 F. Supp. 3d 528, 530-31 (N.D. Ohio 2025) (holding with respect to § 2241 petition raising Fifth Amendment and INA claims that "prudential principles of exhaustion counsel that Petitioner pursue his administrative remedies before seeking a writ of habeas corpus"); *Mendoza v. Raycraft*, No. 25-cv-2183, 2025 WL 3157796, 2025 U.S. Dist. LEXIS 222293, at *33-36 (N.D. Ohio Nov. 12, 2025) (finding all prudential exhaustion factors weigh in favor of requiring exhaustion and refusing to waive exhaustion requirement because it

would not be futile).  Others have found the prudential exhaustion factors do not weigh in favor

of applying it, or that even if they did, exhaustion should be waived.  *See Lopez-Campos*, 797 F.

Supp. 3d at 778-79 (holding with respect to § 2241 petition raising Fifth Amendment and INA

claims that all prudential exhaustion factors weigh in favor of not requiring exhaustion, and, even

if they did, the exhaustion requirement should be waived under these circumstances); *Puerto-*

*Hernadez v. Lynch*, No. 25-cv-1097, 2025 WL 3012033, 2025 U.S. Dist. LEXIS 213732, at *16-

17 (W.D. Mich. Oct. 28, 2025) (finding all prudential exhaustion factors weigh against requiring

exhaustion because issue presented is purely legal (*i.e.*, no need to develop the record), raises

constitutional due process issues that cannot be remedied by administration, and appeal would be

futile); *Martinez-Elvir v. Olson*, No. 25-cv-589, 2025 WL 3006772, 2025 U.S. Dist. LEXIS

211070, at *11 (W.D. Ky. Oct. 27, 2025) (collecting cases where waiting for appeal to BIA

would be futile); *Ramirez*, 2025 WL 3267771, 2025 U.S. Dist. LEXIS 230745, at *9 (concluding

prudential exhaustion should not be required).  From a review of the applicable case law, the

majority position is to not require exhaustion and to waive the requirement even if it should

apply.

Neither party asserts a statute requires exhaustion in this case.  Therefore, only prudential

exhaustion may apply.  Applying the three factors district courts consider, each weigh in favor of

not requiring exhaustion here.  Consider first whether "agency expertise makes agency

consideration necessary to generate a proper record and reach a proper decision."  Here, there is

no need to "generate a proper record" as the issues raised in the Petition are purely legal.  No

further development of the record is necessary.  In addition, the Supreme Court made clear in

*Loper Bright* that "the judiciary is the final authority on issues of statutory construction" and

courts "need not and under the APA may not defer to an agency interpretation of the law simply

because a statute is ambiguous." *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 401, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024).  Accordingly, requiring this statutory interpretation dispute to be raised and litigated in the agency does not further the purpose of exhaustion.  *See Martinez-Elvir*, 2025 WL 3006772, 2025 U.S. Dist. LEXIS  211070, at *11 (collecting cases); *Puerto-Hernandez*, 2025 WL3012033, 2025 U.S. Dist. LEXIS 213732, at *16 (same).

Next consider whether the "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme."  Here, it would not.  The Sixth Circuit has repeatedly held because the BIA cannot review constitutional claims, an appeal would not resolve Petitioner's due process violation claim.  *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) ("[E]xhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.").  Thus, in similar cases to the instant dispute, courts have found this factor does not weigh in favor of exhaustion.  *See Martinez-Elvir*, 2025 WL 3006772, 2025 U.S. Dist. LEXIS  211070, at *12-13 ("because the BIA cannot review constitutional challenges, due process challenges typically do not require exhaustion"); *Ramirez*, 2025 WL 3267771, 2025 U.S. Dist. LEXIS 230745, at *9-10 ("due process challenges, such as the one raised by Petitioner, which are not premised on correctable procedural errors, generally do not require exhaustion").

Lastly take whether "administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review."  In the context of the present dispute relating to whether a petitioner is detained under § 1225 or § 1226, courts have been skeptical the BIA would reverse course from its position in *Matter of Q. Li*, 29 I&N Dec. 66, 69 (BIA 2025). *See Martinez-Elvir*, 2025 WL 3006772, 2025 U.S. Dist. LEXIS  211070, at *13 ("It is far from clear that any administrative review would result in Respondents changing its position"); *Puerto-*

*Hernandez*, 2025 WL3012033, 2025 U.S. Dist. LEXIS 213732, at *18 ("the BIA recently proclaimed that any individual who has ever entered the United States unlawfully and was later detained is no longer eligible for bond and is subject to mandatory detention under § 1225(b)(2)(A)").  Accordingly, it is not likely the agency will correct any alleged due process violations.

Alternatively, the specific facts of this case counsel in favor of waiving exhaustion.  The issue presented in the Petition is a purely legal question which is ready for resolution now.  Delay means hardship.  And there is no real question that a delay would be lengthy here.  *Lopez-Campos*, 2025 WL 2496379, 2025 U.S. Dist. LEXIS 169423, at *5 ("[b]ond appeals before the BIA, on average, take six months to complete").  "Moreover, as other courts across the country have recognized, the 'delays inherent' in the BIA's administrative process 'would result in the very harm that the bond hearing was designed to prevent,' as it would cause Petitioner's prolonged detention without due process."  *Martinez-Elvir*, 2025 WL 3006772, 2025 U.S. Dist. LEXIS  211070, at *13-14 (collecting cases from district courts around the country holding waiver should not be required).

In sum, the Court will not require prudential exhaustion.

## D.       INA Claim: Sections 1226(a) and 1225(b)(2)

The central question raised by the Petition is whether Petitioner should be classified under § 1226(a), as Petitioner asserts, or § 1225(b)(2)(A), as Respondents argue.  (Doc. 1 at 6; Doc. 3 at 48.)  The difference is meaningful—under § 1225(b)(2)(A), Petitioner's detention is mandatory.  8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.").  The result is different if Petitioner is detained

under § 1226(a), which allows for the release of noncitizens on bond.  8 U.S.C. § 1226(a) ("an alien may be arrested and detained pending a decision on whether the alien is to be removed" and "pending such decision, the Attorney General may release the alien on bond [] or conditional parole").

"When interpreting a statute we start, as we must, with the text."  *J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 48 F.4th 721, 726 (6th Cir. 2022); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) ("Our precedents make clear that the starting point for our analysis is the statutory text"); *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) ("the inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (citation omitted).  The Court "must give effect to the clear meaning of statutes as written."  *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (quoting *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414, 137 S. Ct. 1002, 197 L. Ed. 2d 354 (2017)).  "To do so, we assign each word of the statute its ordinary, contemporary, common meaning" "while keeping in mind that statutory language has meaning only in context."  *Id.* (citations and quotations omitted).

Section 1225(a)(1) provides:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

The statute further provides the "terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).  Section 1225(b)(2)(A) states: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that

an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien

shall be detained for a proceeding under section 1229a of this title."

Section 1226(a) addresses the apprehension and detention of aliens, in contrast to § 1225

which addresses "applicants for admission" or "alien seeking admission."  Section 1226(a)

provides, in relevant part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained
> pending a decision on whether the alien is to be removed from the United States.
> Except as provided in subsection (c) and pending such decision, the Attorney
> General--
>    (1) may continue to detain the arrested alien; and
>    (2) may release the alien on--
>        (A) bond of at least $1,500 with security approved by, and containing
>        conditions prescribed by, the Attorney General; or
>        (B) conditional parole[.]

Thus, the question is whether Petitioner is an "alien seeking admission" under § 1225(b)(2)(A),

or subject to the more general provisions in § 1226(a).

Petitioner argues he is detained under § 1226(a) because that statutory provision applies

to individuals who are noncitizens already present in the United States for a period of time and

are not at a border or point of entry seeking admission.  (Doc. 1 at 7.)  To Petitioner, § 1226(a) is

a default rule that applies to noncitizens not subject to other provisions in the INA.  (*Id.* at 8.)  In

contrast, Petitioner argues § 1225(b)(2)(A) applies only to individuals who are "applicants for

admission," "seeking admission," and are "not clearly and beyond a doubt entitled to be

admitted."  (*Id.* at 9.)  That is, § 1225(b)(2)(A) applies to individuals currently seeking admission

at a border or point of entry.  (*Id.*)

Respondents argue Petitioner is detained under § 1225(a) because he is an "applicant for

admission."  (Doc. 3 at 39.)  Respondents argue "applicant for admission" is defined as an "alien

present in the United States who has not been admitted or who arrives in the United States

(whether or not at a designated port of arrival)."  (*Id.*)  To Respondents, this means an "applicant for admission" includes arriving aliens *and* aliens present without admission.  (*Id.* at 39-40.)  As applied here, because Petitioner entered the United States without admission or permission, he is "an alien present without admission, and, consequently, an applicant for admission."  (*Id.* at 40.)

Turning to the text, § 1225(b)(2)(A) states "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a."  From the plain text of the statute, there are three prerequisites to its application: (1) "an applicant for admission"; (2) "an alien seeking admission"; and (3) the alien "is not clearly and beyond a doubt entitled to be admitted."  As noted above, "an applicant for admission" is statutorily defined.  However, "an alien seeking admission" is not.  "When a statute does not define a term, 'we give the term its ordinary meaning,' using 'the traditional tools of statutory construction."  *Kramer v. Am. Elect. Power Exec. Severance Plan*, 128 F.4th 739, 746 (6th Cir. 2025) (first quoting *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863 (6th Cir. 2022), then quoting *Loper Bright*, 603 U.S. at 403).  "[D]ictionaries are a good place to start."  *Id.*  Per Merriam-Webster, "seek" means "to ask for" or "to try to acquire or gain."  Meriam-Webster, available at https://www.merriam-webster.com/dictionary/seek (last accessed Mar. 5, 2026).  The use of "ing" at the end of "seek" transforms it into a present participle, which "expresses present action."  Meriam-Webster, available at https://www.merriam-webster.com/dictionary/present%20participle (last accessed Mar. 5, 2026); *see also Ibarra v. Noem*, No. 25-cv-1335, 2025 WL 3223765, 2025 U.S. Dist. LEXIS 227896, at *13 (W.D. Mich. Nov. 19, 2025) ("a present participle [] necessarily implies some sort of present-tense action") (citation omitted).  As noted above, "admission" is statutorily defined as "the lawful entry of the

alien into the United States after inspection and authorization by an immigration officer."  8
U.S.C. § 1101(a)(13)(A).  Taken together, the plain meaning of an "alien seeking admission" is
an individual presently asking for, or trying to presently gain, entry into the United States.  That
is, an "alien seeking admission" implies the alien is not already in the United States and is
actively seeking to be admitted into the country's borders.  While speaking more generally, the
Supreme Court's decision in *Jennings* lends credence to this interpretation.  In *Jennings*, the
Supreme Court held § 1225 applies to aliens "seeking admission into the country" while § 1226
is the "default rule" which "applies to aliens already in the United States."  *Jennings*, 583 U.S. at
289.

     Respondents do not wrestle with the statutory interpretation of an "alien seeking
admission."  (Doc. 3 at 42-43.)  Instead, Respondents focus on the language "applicant for
admission" which is statutorily defined as "[a]n alien present in the United States who has not
been admitted or who arrives in the United States."  § 1225(a)(1).  From this language,
Respondents say Petitioner is "an applicant for admission and an alien seeking admission."  (*Id.*
at 46.)  To Respondents, an "applicant for admission" is the same as an "alien seeking
admission."  (*Id.*)  In other words, an "alien seeking admission" is not a subset of "applicants for
admission" and is not a separate requirement under the statutory scheme.  (*Id.*)

     Respondents' arguments, however, run into well-established canons of statutory
construction even if the Court views the statute as ambiguous on this point.  First, courts "must
give effect, if possible, to every clause and word of a statute."  *United States v. Wilkes*, 78 F.4th
272, 280 (6th Cir. 2023); *see also United States v. Menasche*, 348 U.S. 528, 538-39, 75 S. Ct.
513, 99 L. Ed. 615 (1955) ("It is our duty to give effect, if possible, to every clause and word of a
statute").  Respondents' view that "alien seeking admission" is the same as "application for

admission" violates that principal.

Second, "[i]t is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001)).  As a result, courts are "reluctant to treat statutory terms as surplusage in any setting." *TRW*, 534 U.S. at 31.  In this way, "[t]he canon against surplusage can be meaningful when a competing interpretation would avoid superfluity." *Bufkin v. Collins*, 604 U.S. 369, 387, 145 S. Ct. 728, 221 L. Ed. 2d 192 (2025).  Respondents' reading of the statute removes "alien seeking admission" from the statute.  In their view, an individual residing in the United States and detained by law enforcement is an "applicant for admission" even if they are not "seeking admission."  This would require the Court to ignore the specific text Congress used in the statute. *See Martinez-Elvir*, 2025 WL 3006772, 2025 U.S. Dist. LEXIS 211070, at *18 ("Respondents' textual analysis completely ignores the term 'seeking' in the phrase 'seeking admission.'"); *Lopez-Campos*, 797 F. Supp. 3d at 781 ("Respondents completely ignore the term 'seeking when attempting to broaden what 'seeking admission' means.  This implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.").  If that is what Congress intended, it could have simply said so.  But instead, the statute contains the "alien seeking admission" language which, plainly interpreted above, requires an alien to be actively requesting to be admitted into the country.

As a corollary to this principal, "the same term usually has the same meaning and different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149, 144 S. Ct. 718, 218 L. Ed. 2d 77 (2024) (citing A. Scalia & B. Garner, Reading Law 170-71

(2012) ("[a] word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning")).  Applied here, Congress's use of "applicant for admission" in part of the statutory phrase, and "alien seeking admission" in another part of the statutory phrase, suggests the two have distinct meanings.  To reach Respondents' interpretation, Congress could have reused the phrase "applicant for admission" or omitted the phrase "alien seeking admission" from the statute.  But that is not how the statute is written. Instead, Congress's use of material variation in terms suggests the terms mean different things.

Consider too the statutes' titles.  *See Spurr v. Pope*, 936 F.3d 478, 488 (6th Cir. 2019) (while titles cannot override plain words in a statute, referring to titles can be "tools available for resolution of a doubt").  Section 1225 is titled "[i]nspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  The use of "arriving aliens" strongly corroborates that it applies to aliens who are in the act of *arriving* in the United States. It does not appear to apply to aliens who have already arrived.  Meanwhile, § 1226 is titled "[a]pprehension and detention of aliens."  That title appears to apply directly to Petitioner here— he is an alien who was apprehended and subsequently detained.  *See Martinez-Elvir*, 2025 WL 3006772, 2025 U.S. Dist. LEXIS 211070, at *18 (the title's "use of 'arriving aliens' to describe the noncitizens to whom the statute applies strongly suggests that § 1225 pertains to noncitizens first entering the United States."); *see also Reyes*, 2025 WL 2609425, 2025 U.S. Dist. LEXIS 175767, at *13 ("The use of 'arriving' to describe noncitizens strongly indicates that the statute governs the *entrance* of noncitizens to the United States.") *Edahi*, 2025 WL 3466682, 2025 U.S. Dist. LEXIS 233006, at *18 ("'arriving' supports the notion that the statute governs 'arriving' noncitizens, not those present already").

Reviewing the statutory scheme in context of other provisions also supports Petitioner's

view.  The Supreme Court in *Jennings* described § 1226(a) as "the default rule" which "applies to aliens already present in the United States."  *Jennings*, 583 U.S. at 288.  Meanwhile, § 1225 is the statute which "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."  *Id.*  That is, § 1225 is a separate more specific section of the statute designed for a specific situation where an alien is detained at the border.  This makes sense: "[t]he inclusion of both provisions in the overall statute is likely no coincidence, but rather a way for Congress to capture noncitizens who fall outside of the specified categories."  *Reyes*, 2025 WL 2609425, 2025 U.S. Dist. LEXIS 175767, at *15; *Chavez v. Dir. Of Detroit Field Off.*, No. 25-cv-2061, 2025 WL 3187080, 2025 U.S. Dist. LEXIS 224173, at *10 (N.D. Ohio Nov. 14, 2025) ("§ 1226(a) provides a general rule, while § 1225(b)(2) provides a carveout to that rule."); *Edahi*, 2025 WL 3466682, 2025 U.S. Dist. LEXIS 233006, at *19 ("The inclusion of a 'default' right after a more limited and narrow statute is 'likely no coincidence'"); *Martinez-Elvir*, 2025 WL 3006772, 2025 U.S. Dist. LEXIS 211070, at *18 ("Congress's decision to enact separate sections of the INA for 'inadmissible arriving aliens' and the more general 'apprehension and detention of aliens' suggests that § 1225 was enacted for a specific and limited purpose.").  While Respondents suggest *Jennings* supports their interpretation, their argument relies on an interpretation of what *Jennings* did not hold—that the Supreme Court "did not appear to consider aliens 'seeking admission' to be a subcategory of applicants for admission."  (Doc. 3 at 46.)  This is not as persuasive as the Supreme Court's characterization of § 1225 and § 1226 more generally.

Lastly, recent congressional action confirms this interpretation.  As the *Martinez-Elvir* court explained:

> The Laken Riley Act added § 1226(c)(1)(E), which requires detention for noncitizens who are inadmissible under §§ 1182(a)(6)(A) (applying to noncitizens

"present in the United States without being admitted or paroled"), 1182(a)(6)(C) (noncitizens who commit misrepresentations), or 1182(a)(7) (noncitizens lacking valid documentation) and who have been arrested for, charged with, or convicted of certain crimes. Because § 1182(a)(6)(A)(i) specifically refers to aliens "present in the United States without being admitted or paroled" and § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the Laken Riley Act's new exception to § 1226's general rule (permitting bond or conditional parole) would be redundant if § 1225(b)(2) already authorized the detention of such individuals. In other words, and as other district courts have determined, if Section 1225(b)(2) applied to noncitizens who are arrested on a warrant while residing in the United States, it would render Section 1126(c)(1)(E)'s criminal conduct criterion superfluous whenever the noncitizen is inadmissible under Sections 1182(a)(6)(A) or (a)(7).

2025 WL 3006772, 2025 U.S. Dist. LEXIS 211070, at *21-22 (quotations and citations omitted); *see also Ibarra*, 2025 WL 3223765, 2025 U.S. Dist. LEXIS 227896, at *16 ("To read § 1226 [as Respondents do] would ignore recent amendments to § 1226 and render Congress' recent actions entirely superfluous, a result that this Court has long been instructed to avoid.").  Respondents argue such redundancy simply reflects that Congress wanted to make "doubly sure" certain individuals are detained.  (Doc. 3 at 49-50.)  True that courts can interpret statutes in a way that creates redundancy if that is the best reading of the statute.  *See Barton v. Barr*, 590 U.S. 222, 235, 140 S. Ct. 1442, 206 L. Ed. 2d 682 (2020).  But not so here.  Respondents' interpretation does not simply create overlap, it requires the rewriting of the statutory scheme and the wholesale redundancy of certain provisions.

In contrast to Respondents' interpretation, Petitioner's reading of the statutory scheme is consistent with statutory interpretation principals.  Considering the plain text, and given courts must give meaning to all terms, that two distinct phrases should presume to have different meanings, the instruction to avoid surplusage and not render phrases redundant, the requirement to view the statute as a whole and in context, considering recent congressional action, and the overwhelming majority of courts to have addressed this issue, the Court agrees with Petitioner he

is detained under § 1226(a), not § 1225.

The Court's interpretation aligns with other district courts who have faced the same interpretation issue.  *See Chavez*, 2025 WL 3187080, 2025 U.S. Dist. LEXIS 224173, at *19-20 ("§ 1226(a) applies broadly to immigrants arrested and detained pending removal determinations. Meanwhile, § 1225(b)(2) carves out from § 1226(a) those immigrants who are (1) either present in the United States without having lawfully entered after inspection and authorization by an immigration officer or arriving in the United States and (2) seeking lawful entry via inspection and authorization by an immigration officer"); *Martinez-Elvir*, 2025 WL 3006772, 2025 U.S. Dist. LEXIS 211070, at *30 ("the Court finds persuasive that 'every court that has examined this novel interpretation of Section 1225 by the United States has rejected their theory and adopted Petitioner's'" and "[t]his Court's own review of federal court decisions reveals that numerous federal courts concur with this Court's interpretation of the INA's statutory language, including many within the Sixth Circuit") (collecting cases); *Edahi*, 2025 WL 3466682, 2025 U.S. Dist. LEXIS 233006, at *38 (discussing case law from other districts holding § 1225 applied but finding "the plain language text and rules of statutory interpretation dictate the [opposite] outcome"); *Franco v. Raycraft*, No. 25-cv-13188, 2025 WL 2977118, 2025 U.S. Dist. LEXIS 207169, at *21 (E.D. Mich. Oct. 21, 2025) ("The reading of the statutes supports this finding, as does every other Court that has had to address the distinction between Section 1225(b)(2)(A) and Section 1226(a)") (collecting cases).

That is not to say courts have been unanimous over the influx of these cases.  For instance, district courts in this Circuit have held the opposite.  *See Coronado*, 2025 WL 3628229, 2025 U.S. Dist. LEXIS 258690, at *18 (explaining "district courts have issued more than 700 decisions addressing the topic in one way or another.  And [Petitioner] correctly notes that most

of those courts, some characterize it as an 'overwhelming majority,' . . . have held that § 1226(a) governs—meaning that he would be entitled to a bond hearing.  But that response is by no means uniform.  A growing number of courts have gone the other way.") (citations omitted).  The *Coronado* court explained "[a]n alien can have physically entered the country many years before and still be an applicant for *lawful* entry, seeking legal 'admission.'" *Id.* at *20.  To the court, this was a better reading of the statutory scheme because "[h]e is present here, and he was not admitted" which is all that is required under the statute.  *Id.*  The phrase "seeking admission" did not mean something distinct to the court.  *Id.* at *9.

Most recently, the Fifth Circuit in a split decision agreed with the arguments Respondents make here.  *See Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, 2026 U.S. App. LEXIS 3899 (5th Cir. Feb. 6, 2026).  In *Buenrostro-Mendez*, the Fifth Circuit held a petitioner was properly detained under § 1225 and had no right to a bond hearing even though the petitioner had been in the United States for many years and was not seeking admission into the country.  2026 WL 323330, 2026 U.S. App. LEXIS 3899, at *5.  The Fifth Circuit explained that the term "applicant for admission" is not "a condition independent from 'seeking admission'" and that by being in the country, the petitioner was seeking admission without any further acts to actually gain admission.  *Id.* at *13-14.  Though the interpretation did create a redundancy, the Fifth Circuit overlooked the redundancy because the two phrases can be used interchangeably, that is, "being an applicant ordinarily entails seeking something."  *Id.* at *15.

The Fifth Circuit also considered various other arguments and principals of statutory interpretation to arrive at the conclusion petitioner could be properly characterized as detained under § 1225.  For instance, the Fifth Circuit explained the use of the present tense "seeking" does not require affirmative action; by statute, if an alien is in the country without admission,

they are deemed to be seeking admission.  *Id.* at *14.  And the Fifth Circuit held Congress could have easily written "arriving alien" instead of an alien "seeking admission," which would have more clearly defined the statutes' roles.  *Id.* at *18.  But it did not.  The Fifth Circuit also considered the language of § 1225 and § 1226 as it relates to other provision of the INA.  *Id.* at *16.  Ultimately, the Fifth Circuit found the government's interpretation better aligns with the plain text of the statutes.

Other circuit courts have also weighed in and more will undoubtedly do the same.  In *Castanon-Nava v. United State Dep't of Homeland Sec.*, the Seventh Circuit held "while a noncitizen arrested in the Midwest might qualify as 'an alien present in the United States who had not been admitted,' § 1225(a)(1), the mandatory detention provision upon which Defendants rely, limits its scope to an 'applicant for admission' who is 'seeking admission.'"  161 F.4th 1048 (7th Cir. 2025) (finding United States was unlikely to succeed on the merits of its claim petitioner was detained under § 1225 despite having resided in the country prior to detention).  The court explained: "Put another way, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2).  It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)."  *Id.* (citations omitted).

As this Court sees it, the *Coronado* and *Buenrostro-Mendez* decisions require a linguistic leap the Court cannot make.  As discussed above, seeking is an active verb.  Merriam-Webster, available at https://www.merriam-webster.com/dictionary/seeking (last accessed Mar. 5, 2026).  An applicant for admission is one whose application is pending.  Pending is a preposition in this context.  Merriam-Webster, available at https://www.merriam-webster.com/thesaurus/pending (last accessed Mar. 5, 2026).  And, in this way, the applicant is awaiting a decision.

Additionally, neither decision presents a persuasive argument for ignoring the "alien seeking admission" language Congress wrote into § 1225.  In fact, the *Buenrostro-Mendez* court fully recognized its interpretation rendered the phrase superfluous.  While the panel found the superfluity unpersuasive, the Court is more persuaded by Petitioner's interpretation which does not render any part of the statute superfluous.  The plain text of § 1225 requires an "applicant for admission" and an "alien seeking admission."  To hold an "applicant for admission" means the same thing as an "alien seeking admission" is contrary to the axiom a court's duty is "to give effect, if possible, to every clause and word of a statute."  *Menasche*, 348 U.S. at 538-39.  And the interpretation ignores the principal that a word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning.  At bottom, in the Court's view, § 1225 cannot be read to apply to every alien in this country who is in the United States without admission.  Therefore, the Court respectfully disagrees with the *Coronado* and *Buenrostro-Mendez* decisions and others that have followed.

One final note: Petitioner has filed a claim for asylum.  The parties have not briefed nor contended the application for asylum affects his detention under either § 1225 or § 1226.  Nonetheless, for the sake of completeness, other courts have found an application for asylum does not transform an alien's detention under § 1226 into § 1225.  *See Edahi*, 2025 WL 3466682, 2025 U.S. Dist. LEXIS 233006, at *21-22 (no party contended asylum application changed petitioner's status, but even if so "it would not be dispositive because [petitioner] did not apply for asylum when he was 'arriving' to the United States as the statute would require"); *see also Santos Francos v. Raycraft*, No. 25-cv-13188, 2025 WL 2977188, 2025 U.S. Dist. LEXIS 207169, at *7 (E.D. Mich. Oct. 21, 2025) ("even if Respondent argues that [petitioner] is 'seeking admission' because he applied for asylum . . . that was not done when he was 'arriving'

to [the United States].  So, the applicability of § 1225(b)(2)(A) would still be incorrect.").

Accordingly, Petitioner's detention is under § 1226(a), not § 1225, and the process due to him arises under the provisions in § 1226(a).  Section 1226(a) requires an individualized custody determination to evaluate flight risk and dangerousness to the community.  *Lopez-Campos*, 797 F.Supp.3d at 785 (holding that the "discretionary bond framework under Section 1226(a) requires a bond hearing to make an individualized custody determination").  Having failed to do so, Respondents violated, and continue to violate, the INA.[3]

### E.    Due Process

In addition to the statutory arguments discussed above, Petitioner claims his continued detention violates the Due Process Clause of the Fifth Amendment.  (Doc. 1 at 13, ¶¶ 50-57.)  In essence, Petitioner argues a noncitizen may only be detained to prevent flight or mitigate danger to the community.  (*Id.* at 5-6, ¶ 29.)  To Petitioner, if a noncitizen is otherwise statutorily eligible for bond, the government may only continue detention after a bond hearing to determine flight risk and danger to the community.  (*Id.*)  Here, because Petitioner argues his detention is improperly categorized as mandatory under § 1225, he claims he was deprived the due process which would otherwise be afforded to him.  (*Id.*)

Respondents did not specifically address Petitioner's constitutional due process claim.  (*See generally* Doc. 3.)  Instead, Respondents suggest that because Petitioner is detained under

---

[3] The Court sought supplemental briefing from the parties regarding the October 28, 2025, hearing in which the Immigration Judge applied § 1225 to Petitioner, and therefore, required mandatory detention.  The Immigration Judge also made the finding Petitioner did not present evidence he was not a flight risk or danger to the community.  The Court sought clarification if this alternative finding was made pursuant to § 1226(a), and thereby provided the due process Petitioner seeks.  Both parties agree the Immigration Judge held the hearing pursuant to § 1225 and not § 1226.  On this basis alone, the hearing violated the INA.  While the alternative findings may be consistent with findings made pursuant to § 1226, a new hearing is required under the proper statutory framework.

§ 1225, which requires mandatory detention, Respondents have afforded the necessary due process.  (*Id.*)  That argument fails for the reasons described above.

Courts consider constitutional due process claims under the balancing test laid out in *Mathews v. Eldrige*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).  Under the *Mathews* test, "in determining the process 'due,' courts must consider three factors: (1) the private interest affected, (2) the risk of erroneous deprivation of that private interest and the value of any additional safeguards, and (3) the government's interest, including the fiscal and administrative burden the additional safeguards would impose."  *United States v. Silvestre-Gregorio*, 983 F.3d 848, (6th Cir. 2020) (citing *Mathew*, 424 U.S. at 334-35).

All factors weigh in favor of requiring Respondents to comply with § 1226(a)'s bond hearing scheme.  First, Petitioner's liberty interest is at stake.  *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").  Second, the risk of erroneous deprivation is high if Petitioner is entitled to bond, but an immigration judge fails to assess his risk of flight and dangerousness.  Third, Respondents have not addressed any government interest, but in any event, any burdens imposed by providing due process were mandated by law.  Respondents cannot claim complying with the law as stated is overly burdensome.

Accordingly, the Court finds Petitioner's continued detention without a bond hearing pursuant to § 1226(a) violates the Due Process Clause of the Fifth Amendment.

## III.    CONCLUSION

For the reasons stated above, Petitioner Jiangfei Gu's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) is GRANTED.  Respondents are ORDERED to

immediately release Petitioner, or in the alternative, provide Petitioner with a bond hearing under

§ 1226(a) within five (5) days from the date of this Order.


       **IT IS SO ORDERED.**


Date:   March 5, 2026                                _____

                                           BRIDGET MEEHAN BRENNAN
                                         UNITED STATES DISTRICT JUDGE